# PECK a. WILLIAMS.

*New York Superior Court ; Special Term, November, 1861.*

SUPPLEMENTARY PROCEEDINGS.—PRODUCTION OF DOCUMENTS.\*—
CONFIDENTIAL DISCLOSURES.

The production of documents in the hands of counsel can be resisted only when a controversy exists, or is anticipated between parties, in relation to the subject

---

\* In the case of ELDRIDGE a. CHAPMAN (*Supreme Court, First District ; Chambers, November*, 1861), it was held that, under 2 Rev. Stat., 398, it was proper for the officers, therein authorized to issue a summons requiring a witness to appear and give testimony to be used in the courts of other States and countries, to require such witness to produce books and papers.

In this case, a summons was issued on behalf of the defendant, by one of the justices of the court, summoning the witnesses to be examined, who resided in the city of New York, to appear before one of the justices of the Supreme Court, at Chambers, at the City Hall, in the city of New York, to be examined as witnesses pursuant to 2 Rev. Stat., 398. The summons also contained a clause in the nature of a subpœna *duces tecum*, requiring one of the witnesses to bring with him, and to produce, in order to be given in evidence on such examination, the books, papers, memoranda, and entries showing the state of dealings and accounts between the firms of George Bliss & Co. and Philip Bliss & Co., on the one hand, and Thomas P. Eldridge, Edwin M. Sanders, and John Yale respectively on the other, between certain dates mentioned in the summons.

The plaintiff, his counsel, and the witness required to produce the books and papers, appeared before the justice, at chambers, and objected to the requirement to produce books and papers, and read affidavits in support of the objection. It appeared that the witness had declined the defendant's request to furnish an account-current of the state of the dealings and accounts, as mentioned in the summons, and had declined to go further in his testimony than his bare recollection would enable him, without recurrence to his books, which was necessary to enable him to testify fully to the facts required.

Lorenzo Sherwood, for the application, contended that the statute contemplated the same examination of a witness that he would be subjected to were he present in the court of the State where the cause was to be tried, and that the defendant was entitled to such an examination of the witness, in connection with his books and papers, as would be necessary to give his testimony effect in the court where the cause was proceeding.

Gershom A. Seixas, opposed.

W. F. ALLEN, J., decided that the witness must either furnish a satisfactory statement, or account-current, showing the state of dealings and accounts as mentioned in the summons, or bring his books, papers, &c., before the justice, and produce the same to be given in evidence, in connection with his testimony.

on which communications were made to counsel, on the documents intrusted to him.*

An exception to the rule, as to privileged communications, exists only in cases of crimes strictly so called.

Proceedings supplementary to execution against the property of the defendant.

The examination of the judgment-debtor, and other witnesses, disclosed as facts :—That on or about the 1st day of February, 1860, the defendant and Jeremiah Haley, Jr., entered into co-partnership, as hair-dressers, under the name and style of Williams & Co., and purchased from Jeremiah Haley, Sr., the hair-dressing saloon No. 197 Broadway, for the sum of $8,000. Williams & Co. continued in business for the period of six months, or thereabouts, during which time they paid to Jere·miah Haley, Sr., upon the contract of purchase, about $3,500 The defendant, Williams, testified that owing to pecuniary embarrassments, growing out of other business in which he was interested, and to prevent the creditors of Williams from reaching his property, the firm of Williams & Co. executed a bill of sale of their saloon and fixtures to Jeremiah Haley, Sr., who agreed, as part of his consideration of the sale, to pay the plaintiff's debt of $1,300. It was also shown that the several agreements between Williams & Co. and Jeremiah Haley, Sr., as also the bill of sale, were drawn by Livingston K. Miller, Esq., who retained them for safe-keeping.

Livingston K. Miller was called as a witness, and requested to produce the bill of sale, and the various written contracts between the parties, but declined so to do, on the ground that he was the attorney and counsel for Jeremiah Haley, Sr., by whose request he prepared the papers, and for whose benefit he kept them in his custody,—claiming, that, as such counsel, he was not bound to produce such papers, as they belonged to his client, Jeremiah Haley, Sr.

A motion was now made for an attachment against Mr. Miller, for contempt in declining to produce the bill of sale and contracts.

*E. W. Dodge*, for plaintiff, insisted :—I. That the judgment-creditor had the right to a production of the writings, for the

---

* Compare Mitchell's Case, 12 *Ante*, 249.

purpose of ascertaining whether Jeremiah Haley, Sr., had entered into an agreement to pay the plaintiff's debt against Williams & Co. That, inasmuch as Mr. Miller, in drawing the bill of sale and contracts, acted for Williams & Co., as well as Jeremiah Haley, Sr., the question of privileged communications did not arise. He did not act as an attorney in any litigation, pending or apprehended, for either party. He acted as draughtsman or conveyancer for all the parties. No communications made to Mr. Miller by his client were asked for; and the rule of an attorney's privilege extended no further—except, perhaps, to withhold a writing which was the private and exclusive property of his client. The writings in question were the joint property of all the parties, and Williams & Co. consented to their production. (Coveney *a.* Tannahill, 1 *Hill*, 33; The Bank of Utica *a.* Mersereau, 3 *Barb. Ch.*, 528.)

II. Upon the testimony of Williams, it appears that the sale from Williams & Co. to Jeremiah Haley, Sr., was made with a view to defraud the creditors of Williams. Such being the object of the parties, no privilege can attach to the communications made by any party to the attorney who is employed in the transaction. And this is the rule in this case, even though Mr. Miller did not know what the parties contemplated. (Coveney *a.* Tannahill, 1 *Hill*, 33.)

*Livingston K. Miller*, in person, and as attorney for Jeremiah Haley, Sr., cited March *a.* Ludlum (3 *Sandf. Ch.*, 35); Williams *a.* Fitch (18 *N. Y.*, 546); Francis' Case (1 *City H. Rec.*, 121); Brandt *a.* Klein (17 *Johns.*, 335); People *on rel.* Mallory *a.* Benjamin (9 *How. Pr.*, 419); Kellogg *a.* Kellogg (6 *Barb.*, 116, 130); Jackson *a.* Denison (4 *Wend.*, 558).

HOFFMAN, J.—The documents, of which a production is sought, were prepared by Mr. Miller, the counsel of Jeremiah Haley, Sr., at his request, and on his employment were executed by Williams, and Jeremiah Haley, Jr., and then delivered to the counsel acting for Jeremiah Haley, Sr. I think this is the case substantially made out by the papers. That Williams, and Haley, Jr., had an interest in these papers which might entitle either of them to call for a production, may, perhaps, be the case. But the question arises between third persons, creditors

of Williams, and Haley, Jr. Williams's consent to the production would not, I think, be sufficient of itself to authorize third persons to demand it.

The subject of the production of documents, resisted on the ground of professional confidence, was extensively examined by Vice-chancellor Sandford in March *a*. Ludlum (3 *Sandf. Ch.*, 35), and all the leading cases were cited; the case of Holmes *a*. Huddely is since reported in 1 *Phillips*, 476; and in the same volume, page 91, is the case of Henessy *a*. Cloberry (see the American edition, and the notes to such cases). I have gone over these authorities, and my conclusion is, that there must be at least a controversy anticipated between parties in relation to the subject of which the communications were made to counsel on the documents intrusted to him. It is not enough that they were made or delivered in the general course of professional business, although Walker *a*. Wildman (6 *Mad.*, 47) goes that length. In the case referred to by counsel of People *a*. Benjamin (9 *How. Pr.*, 419), the bill of sale was delivered to the witness as counsel, after he was employed in the action. In the Bank of Utica *a*. Mersereau (3 *Barb. Ch.*, 528), a controversy must have been anticipated. Part of the communications made to counsel were, that the Steuben Bank and other creditors were crowding them, the clients.

The counsel of the motion contends, that the rule as to privileged communications does not extend to cases of fraud, and cites Coveney *a*. Tannahill (1 *Hill*, 33). But the chancellor, in the Bank of Utica *a*. Merserau (*et supra*) has shown that the exception only exists in cases of crimes, strictly so called.

My opinion upon the whole is, that the documents ought to be produced. The old case in the House of Lords (Ratcliff *a*. Lunnan), so much criticised and disapproved of, is an authority in point.

Order for the production of the documents in the hands of the attorney, Miller. Order to be settled on two days' notice.